IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

| | |
|---|---|
| JAMES WILLIAMS and DANIEL NESSIM, on behalf of themselves and all others, <br><br> Plaintiffs, <br><br> v. <br><br> SOC LLC, doing business as SOC West Virginia LLC doing business as Day and Zimmerman Federal Services, <br><br> Defendant. | Civil Action No. 3:17-CV-92 <br> (Chief Judge Groh) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT**

Plaintiffs James Williams and Daniel Nessim, by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of Their Unopposed Motion for Approval of Settlement. Defendant does not oppose this Motion.

**I.      PROCEDURAL HISTORY**

On August 3, 2017, Plaintiffs filed a Complaint alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to pay them overtime. *See* Compl., Dkt. 1. Plaintiffs alleged that they were required to work over 40 hours a week as Explosive Detection Canine Instructors and that Defendant misclassified them as exempt employees. *Id*.

Defendant filed an Answer to Plaintiffs' Complaint on October 18, 2017. *See* Answer, Dkt. 3. The parties exchanged discovery requests and responses and Defendant took Plaintiff Daniel Nessim's deposition. On July 25, 2018, after more than seven months of arm's length negotiations, the parties agreed to settle their claims. *See* Settlement Agreement, attached hereto as Exhibit A.

## II. STANDARD GOVERNING MOTIONS TO APPROVE FLSA SETTLEMENTS

The Fourth Circuit has not set forth specific guidelines for approval of an FLSA settlement. However, courts in this district typically rely on the factors discussed in the Eleventh Circuit's decision in *Lynn's Food Stores v. United States*, 679 F.2d 1350 (11th Cir. 1982). *See Harvey v. Ranson Golden Horseshoe, Inc.*, No. 3:15-CV-58, 2016 WL 2858864, at *1 (N.D. W.Va. May 16, 2016) (J. Groh). When reviewing a proposed FLSA settlement, the district court must "scrutinize the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F. 2d at 1353, 1355.

## III. ARGUMENT

### A. A Bona Fide Dispute Exists

The settlement of the instant action involves a bona fide dispute. This court has previously held that "a settlement resolves a *bona fide* dispute when an employee claims entitlement to payment, and 'neither the Settlement Agreement, nor the negotiations that preceded it, represent any admission by Defendant[] of any violation of law, or any liability to Plaintiff[].'" *Howell v. Dolgencorp, Inc.*, No. 2:09-cv-41, 2011 WL 121912, at *3 (N.D. W.Va. Jan. 13, 2011) (quoting *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009)). Here, Plaintiffs alleged that they were owed overtime for time worked in excess of 40 hours per week. *See* Compl., Dkt. 1, at ¶ 24. Defendant denied that any Plaintiff was owed any overtime wages. *See* Answer, Dkt. 3, at ¶ 24. The Settlement Agreement also states that Defendants do not admit, but rather deny, liability to Plaintiffs. *See* Settlement Agreement, ¶ 8. Thus, the Settlement Agreement should be approved because it resolves a bona fide dispute between the parties.

### B.      The Settlement is Fair and Reasonable

To evaluate fairness and reasonableness, this Court has recently articulated that this review includes a finding as to the following factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [the parties] . . . after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of [the] plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery." *Harvey*, 2016 WL 2858864, at *1 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

#### 1.      Extent of Discovery

The parties sought, received, and reviewed written discovery and document productions. Defendant deposed Plaintiff Nessim and was preparing to depose Plaintiff Williams. Plaintiffs prepared to depose multiple witnesses as well. The discovery exchanged in the matter, as well as various protected Fed. R. Evid. 408 communications between counsel during the more than seven-month arm's length negotiations, was sufficient to assess the potential damages and exposure analyses. In particular, the discovery and those protected communications were critical to the parties arriving at their projected damages figures (discussed in more detail *infra*) which, along with each party's assessment of their risks proceeding with further litigation, were key to the parties reaching a fair and reasonable settlement.

#### 2.      Stage of the Proceedings

The discovery deadline in this matter was July 27, 2018, with summary judgment motions due by August 17, 2018, and a trial scheduled for November 18, 2018. Before incurring additional legal fees and costs by proceeding further, the parties engaged in over seven months of

arm's length settlement negotiations, which yielded the Settlement Agreement. Without this settlement, the case likely would have proceeded through trial.

### 3. Absence of Fraud or Collusion

There is no fraud or collusion in reaching this settlement, which was guided through over seven months of arm's length negotiations by sophisticated and experienced counsel. Furthermore, the fact that the parties agreed to limit their discussion of the settlement does not render it unreasonable. Specifically, Paragraph 6 of the Settlement Agreement prohibits Plaintiffs, their counsel, and the Defendant from making certain public statements regarding the settlement. Defendant believes this confidentiality provision is a material term of the settlement and reasonably designed to limit workplace disruptions and put this matter to rest. Moreover, this confidentiality provision does not frustrate the purposes of the FLSA by keeping the settlement hidden from public view. Indeed, the settlement agreement itself will be a public record.[1] Under these circumstances, the confidentiality provision does not present grounds for finding the settlement to be unreasonable. *See Amaya v. Young & Chang, Inc.*, No. 14-749, 2014 WL 3671569 at *4 n.3 (D. Md. July 22, 2014) (finding confidentiality clause did not make settlement unreasonable because the terms of the settlement were a public records and thus the confidentiality clause was "of no practical effect"); *Quevedo v. HBJ, Inc.*, No. 14-734, 2014 WL 3970173 at *4 n.2 (D. Md. Aug. 13, 2014) (same); *see also Lovett v. Connect America.com*, No. 14-2596, 2015 WL 5334261, at * 6 (E.D. Pa. Sept. 14, 2015) (approving FLSA settlement that was publically filed with a confidentiality provision requiring any plaintiff who "publicize[s] or

---

[1] The public's interest in the settlement also is diminished because the only individuals who are actually affected by the settlement will all be participating in it. In other words, the circumstances here are entirely unlike those in a Rule 23 class action settlement in which absent class members may not even be aware that a case was pending, settled and that they are waiving potential claims.

disclose[s] the terms of the Agreement or the negotiations" to disgorge 40% of his or her settlement).

### 4. Experience of Plaintiffs' Counsel

Plaintiffs' attorneys are highly experienced and have successfully acted as representative counsel in numerous wage and hour actions, as well as other complex mass actions, in federal and state courts throughout the United States. (*See* firm resumes, attorney biographies attached as Exhibits B and C).

### 5. Counsel's Opinion

As reflected in the record and set forth above, the parties were represented by counsel experienced in wage and hour litigation who protected their client's respective rights and advocated zealously on their behalf. The parties' counsel are well-informed of the law in this area and well-positioned to fairly evaluate the claims and defenses and damages.

### 6. Probability of Plaintiffs' Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery

While Plaintiffs were confident in their claims, case law (from the Fourth Circuit or otherwise) does not directly address whether a canine instructor is exempt from the FLSA overtime requirements. Thus, Defendant could have asserted multiple challenging defenses, necessitating a trial for Plaintiffs to prevail. For example, in *Bates v. United States*, the plaintiffs challenged defendant's classification of the position of National Canine Facility Course Development Instructor ("CDI") as exempt under the administrative exemption. 60 Fed. Cl. 319, 321 (Fed. Cl. 2004). The court granted the defendant's motion for summary judgment, stating "no genuine issues of material fact as to whether the CDI position satisfies the administrative exemption." *Id*. at 332. Also, in *White v. San Mateo County*, the Ninth Circuit affirmed the district court's conclusion that a police officer who sought overtime compensation for time spent caring for his

police dog met the requirements for the executive exemption.  37 F. App'x 280, 281 (9th Cir. 2002).

Defendant could also argue that Plaintiffs were teachers who should be considered exempt from the overtime requirements "if their primary duty is teaching, tutoring, instructing or lecturing in the activity of imparting knowledge, and if they are employed and engaged in this activity as a teacher in an educational establishment. . . . Exempt teachers include teachers of skilled or semi-skilled trades and occupations, teachers engaged in automobile driving instruction, and aircraft flight instructors." DOL Wage and Hour Division, Fact Sheet #17D:  Exemption for Professional Employees Under the Fair Labor Standards Act (FLSA), Revised July 2008, at https://www.dol.gov/whd/overtime/fs17d_professional.pdf.  The Fact Sheet states that "[h]aving a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge includes, by its very nature, exercising discretion." 29 C.F.R. § 541.303(a); *see also*, *Gonzales v. New England Tractor Trailer Training School*, 932 F. Supp. 697, 701 (D. Md. 1996) (holding that truck-driving instructors were exempt); *King v. United States*, 119 Fed. Cl. 277, 288-89 (Fed. Cl. 2014), *aff'd*, 627 F. App'x 926 (Fed. Cir. 2016) (finding that Border Patrol Academies qualify as educational establishments).

Moreover, even if Plaintiffs prevailed on liability, Defendant could mount a challenge to the amount of damages that Plaintiffs were entitled to receive.  The key issue would be whether the half-time or one-and-one-half time damages calculation is appropriate.  Defendant would argue that the half-time rate is appropriate for damages calculations in misclassification cases because a worker's salary already compensated him or her for the straight time rate for all hours worked (including hours over 40 per week).  *See, e.g., Calderon v. GEICO General Ins. Co.*, 809 F.3d 111, 131 (4th Cir. 2015) (following *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572

(1942) to determine the regular rate and overtime damages in misclassification case); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354-357 (4th Cir., 2011) (same); *see also Ransom v. M. Patel Enterprises, Inc.*, 734 F.3d 377, 384-86 (5th Cir. 2013); *Urnikis-Negro v. Am. Fam. & Prop. Serv.*, 616 F.3d 665 (7th Cir. 2010). Defendant could further argue that an implied agreement between an employer and employee is sufficient to establish that the employee's salary was intended to compensate them for all hours worked and thus that the half-time rate should apply. *See Calderon*, 809 F.3d at 131-32 ("Importantly, 'an understanding [that the salary was compensation for all hours worked] may be 'based on the implied terms of one's employment agreement if it is clear from the employee's actions that he or she understood the payment plan.'") (quoting *Mayhew v. Wells*, 125 F.3d 216, 219 (4th Cir. 1997) (other internal citations omitted)); *see also Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283, 286 (N.D. Ill. 1995) ("That the parties never expressly agreed to this arrangement [that plaintiff would be paid a salary for all hours worked] is irrelevant; their agreement is implied from their conduct.").

Based on the exchanged discovery in this matter and protected Fed. R. Evid. 408 communications, Plaintiffs' calculation of overtime hours indicated that if they were owed overtime at a half-time (0.5) rate, their damages if they prevailed would be $22,706.76 combined; and if calculated at a one-and-one-half time (1.5) rate, their damages would be $68.099.04. Because Plaintiffs also sought liquidated damages in their Complaint, these amounts could have been doubled if Plaintiffs prevailed on that issue to $45,413.52 and $139,198.08 respectively. Thus, the possible outcomes to this litigation ranged from $0 (i.e., a defense verdict) to $139,198.08.

Based on the aforementioned, the parties concluded that a settlement on the terms set forth in the Settlement Agreement attached hereto is fair, reasonable, adequate, in the best interests of

both parties and not worth the costs and risks associated with a trial. Additionally, the parties have agreed that Defendant does not oppose the request for Plaintiffs' counsel to receive $38,000 in attorneys' fees and recoverable costs.[2]

### IV.  CONCLUSION

For all the above reasons, the parties respectfully request entry of an order approving the Settlement Agreement and dismissing this action with prejudice.


DATED:  September 17, 2018        ADAMS LAW FIRM, PLLC
                                  *Attorneys for Plaintiffs*

                                  By: */s/ Jared Adams*
                                  Jared Adams
                                  PO Box 755
                                  Martinsburg, WV 25402
                                  304.881.1152
                                  jared@adamslawfirmpllc.com

                                  Andrew Woellner, Esq.
                                  awoellner@potts-law.com
                                  Potts Law Firm, LLP
                                  3737 Buffalo Speedway, Suite 1900
                                  Houston, TX  77098

---

[2] Plaintiffs' counsel reduced the 40% contingency fee previously agreed by the Parties.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

| | |
|---|---|
| JAMES WILLIAMS and DANIEL NESSIM, on behalf of themselves and all others,<br><br>          Plaintiffs,<br><br>v.<br><br>SOC LLC, d/b/a SOC West Virginia LLC d/b/a Day and Zimmerman Federal Services,<br><br>          Defendant. | Civil Action No. 3:17-CV-92<br>(Chief Judge Groh) |

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 17, 2018, I electronically filed the foregoing Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Settlement with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel listed below:

      Larry J. Rector (WV Bar #6418)
      larry.rector@steptoe-johnson.com
      Steptoe & Johnson PLLC
      400 White Oaks Boulevard
      Bridgeport, WV  26330

      Michael J. Puma (*admitted pro hac vice*)
      michael.puma@morganlewis.com
      Morgan, Lewis & Bockius LLP
      1701 Market Street, 6th Floor
      Philadelphia, PA  19103

      *Attorneys for Defendant*

                                  */s/ Jared Adams*
                                  Jared Adams